# Northern California Floor Covering Master Agreement

*between*

**DISTRICT COUNCIL No. 16**

*and*

**NORTHERN CALIFORNIA FLOOR COVERING ASSOCIATION**

**AND**

**FLOOR COVERING ASSOCIATION OF THE CENTRAL COAST COUNTIES**



July 1, 2005 – June 30, 2008



Zabinski Printing Co.

# COLLECTIVE BARGAINING AGREEMENT

THIS AGREEMENT made and entered into as of the first day of July 1, 2005 by and between CENTRAL COAST COUNTIES FLOOR COVERING ASSOCIATION and the NORTHERN CALIFORNIA FLOOR COVERING ASSOCIATION on behalf of their regular members who have authorized their inclusion in the coverage of this contract and on behalf of any Employers who in the future may authorize their inclusion in the coverage of this contract, INDEPENDENT Floor Covering Employers signatory hereto, each of whom is hereinafter referred to as the "EMPLOYER", and DISTRICT COUNCIL 16, CARPET, LINOLEUM AND SOFT TILE WORKERS, LOCAL UNION 12 and CARPET, LINOLEUM AND SOFT TILE WORKERS, LOCAL UNION 1237 of the International Union of Painters and Allied Trades, AFL-CIO, hereinafter referred to as the "Union".

## WITNESSETH:

WHEREAS, the Union and the Employer, in the interest of the general public, desire the maintenance of a sound and harmonious relationship between them for the future,

NOW, THEREFORE, the parties hereto agree as follows:

- 1 -

# ARTICLE 1
## JURISDICTION

1. By way of illustration and not limitation, the jurisdiction applies to all work including and related to the installation of resilient floor, wall, and ceiling materials commonly referred to as carpet, linoleum, vinyl, rubber, cork, asphalt, vinyl composite mastipave, synthetic grass, prefinished hardwood, laminates, engineered wood, all applications of pre-finished and laminate floors, epoxy, urethane, plastics, metal, and all similar materials in sheet, tile, or liquid form.

   Installation on floors, walls, ceilings, stairs, fixtures, furnishings, or exterior applications on structures, patios, pool perimeters, sport fields, area ways, all other like or similar applications, whether permanent or temporary.

   Measuring, cutting, fabrication, packaging, pickup, delivery and handling of materials and tools that are used by the floor covering industry.

   Preparatory removal of floor covering, wall covering, adhesive and underlayments. The sanding, patching, sealing, and priming of the installation surface.

   Installation of lining felt, carpet, pad, underlayment compositions, leveling compounds, or any material used as a base for the finished surface.

   Applications and fitting of fasteners, protective and decorative trim relating to the installation such as tackless, tape, nosing, top set or butt-to-base, cap, corner beads, edging, hinging, and all other accessories, and related sundries.

   Repair, finishing, coating, sculpturing, insets, and such other processes relating to the industry.

2. The terms and conditions contained in this Agreement shall apply uniformly to all such work performed within the territorial jurisdiction of the Union.

# ARTICLE 2
## OWNER MEMBERS

1. Owner Members are proprietors, partners or corporate owners or officers or anyone participating in the management of the Employer, but who also performs work pursuant to this Agreement and who has applied for and been granted Owner Member status by the Union. There shall be only two (2) Employer members for each Employer. The Employer shall pay fringe benefit contributions on all hours worked subject to the provisions of the appropriate trust documents, and the Owner Member shall be subject to the provisions of Article 4 of this Agreement, Union Security.

2. Only two (2) Owner Members from each signatory Employer shall be permitted to work with the tools of the trade and only if such signatory Employer employs at least one (1) other employee covered under this Agreement. An Owner Member shall not be permitted to work any overtime in other than a supervisory capacity.

3. Any worker or applicant for employment, who has or who obtains a Floor Covering Contractor's License, shall inactivate such license before seeking or accepting employment under the terms of this Agreement or he shall not work or be dispatched by the Union.

4. No Employer signatory to this Agreement shall be allowed to work for any other Employer as a worker

Case 3:07-cv-03207-SI    Document 27-2    Filed 05/13/2008    Page 4 of 10

## ARTICLE 16
## HEALTH AND WELFARE FUNDS

1. There has been established a Health and Welfare Fund. The detailed basis of the administration of the Health and Welfare Fund shall be pursuant to the Agreement and trust declarations adopted by the Associations, Independent Floor Covering Employers and the Union, which shall be binding upon all Employers signatory to or bound by this Agreement.

2. The Employer hereby agrees to be bound as a party to the terms and provisions of the trust establishing the Health and Welfare Trust Fund, and said Agreement is made part hereof by reference. The Employer acknowledges receipt of the trust agreement for said fund, and irrevocably appoints and designates the present Employer trustees and their successors as its agents.

3. The contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

## ARTICLE 17
## INDUSTRY FUND

1. There has been established two (2) Regional Industry Funds for the purpose of improving industry relationships within and related to the floor covering industry. The detailed basis of the administration of the new Industry Fund shall be pursuant to the agreement and trust declaration adopted by the Floor Covering Associations; Central Coast Counties Floor Covering Association and the Northern California Flooring Association which shall be binding upon all Employers signatory to or bound by this Agreement.

- 28 -

2. Any fund merger agreement must establish equal trustee representation from the two (2) areas of Region 1 Employers whose primary place of business is located within the counties of Alameda, Contra Costa, Napa, Solano, San Mateo, San Francisco, Marin, Sonoma, Mariposa, Lake and Mendocino, and Region 2 Employers whose primary place of business is located within the counties of Santa Clara, San Benito, Santa Cruz and Monterey.

3. The creation of said Industry Funds, and trust declarations and their administration and organization shall be solely the responsibility of the Employers and they shall be operated for the improvement and betterment of the industry which shall include but not be limited to, studies which may be made of the economic and other factors affecting the entire floor covering industry in the area within the scope of this Agreement. No part of the contributions to said funds shall be used for partisan political or anti-union activity.

4. No part of the contributions to the Industry Funds shall be used, either directly or indirectly, for collective bargaining and/or negotiations of collective bargaining agreements which are inimical to the Union. The Industry Funds shall be used and expended solely for the purposes and objectives set forth in the various agreements and declarations of trust, establishing the Industry Funds. The Industry Funds referred hereto shall be audited at least once annually by a certified public accountant, and copy of said audit shall be available.

5. The Employer's contribution to the Industry Fund shall be twenty three cents ($0.23) per hour worked and shall be set forth in Schedule A.

- 29 -

# ARTICLE 18
# RETIREMENT PLANS

1. There are two (2) retirement plans established and recognized under this Agreement into which Employers may contribute to provide a retirement benefit for their employees. Participation by an employee in one or both of these plans depends upon the employee's classification as described in Section 2 herein. The two (2) retirement plans are the following:

   (a) There has heretofore been established and there is presently in effect the RESILIENT FLOOR COVERING PENSION FUND and the master trust declaration for the RESILIENT FLOOR COVERING PENSION FUND dated December 24, 1958, as amended (hereinafter referred to as Plan A). The Employer hereby agrees to be bound as a party by all the terms and provisions of the Master Trust Declaration for the Resilient Floor Covering Pension Fund, restated as of June 12, 1976, as amended, establishing the Resilient Floor Covering Pension Fund, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

   (b) There has heretofore been established and there is presently in effect the CENTRAL COAST COUNTIES FLOOR COVERING INDUSTRY PENSION FUND and the Trust Agreement for the CENTRAL COAST COUNTIES FLOOR COVERING INDUSTRY PENSION FUND effective August 1, 1990, as amended (hereinafter referred to as Plan B). The Employer hereby agrees to be bound as a party by all the terms

- 30 -

and provisions of the Trust Agreement for the Central Coast Counties Floor Covering Industry Pension Fund, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

2. There are three (3) classifications of employees: Journeymen, Apprentice and Floor Covering Handler whom are covered under this Agreement for the purpose of determining the pension contributions to Plan A and Plan B. Applications for classification designations shall be submitted to the Administrator and classification designations processed by the Administrator. The classification designation shall be as follows:

   (a) Class A employees shall consist of all employees whose total retirement contribution provided for in Schedule A shall be contributed to Plan A.

   (b) Class B employees shall consist of all employees whose total pension contribution provided for in Schedule A shall be divided between Plan A and Plan B.

   (c) Each employee shall submit to the Trust Fund Administrator any classification change no later than December 2nd of each year, unless the employee is dispatched to their first job at which time he or she shall be entitled to designate a classification. The Trust Fund Administrator shall make the appropriate allocation to Plan A, or to Plan A and Plan B, as designated by the employee. In no event shall a classification change be implemented except by proper notification from the employee to the Trust Fund Administrator, and no more than one (1) classification change may be effected during any contract year.

- 31 -

3. There has heretofore been established and there is presently in effect the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN and the Trust Agreement for the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN effective August 1, 1990, as amended. The Employer hereby agrees to be bound as a party by all the terms and provisions of the Trust Agreement for the RESILIENT FLOOR COVERING EXCESS BENEFIT PLAN, and said Agreement is made a part hereof by reference. Each Employer party hereto acknowledges receipt of the Trust Agreement for said Fund.

4. Said plans shall continue to be jointly administered through Boards of Trustees established pursuant to said declarations of trust as the same may have been heretofore amended and may hereafter be amended from time to time, until the expiration thereof. Each Employer, signatory hereto, irrevocably appoints and designates the Employer trustees as his agents. Said declarations of trust as so amended shall be binding upon each Employer, party hereto, and the Union, party hereto, and the benefits thereof shall insure to the persons qualifying there under.

5. The Contribution rate shall be set forth in Schedule A and shall be paid on all hours worked.

## ARTICLE 19
## TRUST FUND ADMINISTRATION

1. In the event that a signatory Employer becomes delinquent in the payment of Trust Fund obligations, said contractor shall be given a ten (10) day notice by the Trust Fund Administrator to correct said delinquency, and if said delinquency is not corrected as specified, the Employer shall, in addition to correcting said delinquency and prior to being authorized to receive dispatch of employees under this Agreement, said Employer shall post with the Trust Funds Administrator a Surety Bond, cash or other security acceptable to the Trust Fund Trustees, in the amount of Ten Thousand Dollars ($10,000) for 0-10 employees, Thirty Thousand Dollars ($30,000) for 11-30 employees and Sixty Thousand Dollars ($60,000) for 31 employees and up, to guarantee any deficiency of such employer in the payment of wages, health and welfare and other fringe benefits or monetary obligations that are duly imposed under the provisions of this Agreement for a period of twelve (12) months. The number of employees per employer shall be based on the average number of employees reported to the Trust Funds during the preceding three (3) month period.

2. The Trust Fund heretofore established for Health and Welfare, Pensions, Apprenticeship, Industry Fund and the procedures for Dues Check-Off are hereby continued for each of the Trusts and procedures existing under the collective bargaining agreements between the Associations, independent floor covering Employers and the Union. Each Employer party hereto acknowledges receipt of the Trust Agreements for each of said Trust Funds.

3. The terms of such Trust Agreements are incorporated herein by reference.

4. Each Employer signatory hereto irrevocably designates the Central Coast Counties Floor Covering Association and the Northern California Floor Covering Association as his attorney-in-fact for the appointment and removal of Management Trustees for each of the Trusts. All new trustees appointed by the Employers shall be signatory to the collective bargaining agreement and report a minimum of three hundred sixty (360) hours of employee benefits during any 90 day (3 month) period. All Trustees representing labor shall be appointed in accordance with District Council No. 16 Bylaws.

- 32 -

- 33 -

5. The individual Employer further and additionally agrees to pay all reasonable costs and attorney's fees necessary and incurred to collect any amount due hereunder in the event of the default in performance by the Employer hereunder, including collection of sums due hereunder by demand or suit on the surety bond.

6. Either the Union or the Trustees of a Trust established or existing for receipts of monies collected hereunder may commence action in law or equity to enforce the collection of any amounts due or that become due under this Agreement or any Trust Agreement established pursuant to the terms of this Agreement.

7. All contributions required hereunder are due and payable on the fifteenth (15th) day of the month following the month in which the work is performed. Contributions received after the fifteenth (15th) day of the month following that in which the work was performed shall be delinquent. If reports or payment of all contributions are not received by the twentieth (20th) day following the end of the calendar month in which the work was performed, the default of performance by the Employer shall be a substantial breach of this Agreement, and the following remedies and action may be taken within the discretion of the Union.

(a) This Contract and Agreement may be suspended without further notice whatsoever following twenty-four (24) hour written notice from the Union or the Trust Fund to said defaulting Employer.

(b) The Union may remove and recall all employees of the defaulting Employer pursuant to the terms of this Agreement and require that no employees shall work for said defaulting Employer unless said Employer is reinstated.

- 34 -

8. All reasonable expenses and cost of litigation incurred by the Union or the trustees, or any duly authorized agent thereof, as well as all reasonable attorney(s)' fees in the event of litigation shall be an additional liability and shall be payable by the defaulting Employer.

9. The parties mutually recognize the fact that the failure or refusal of an Employer to comply with this Agreement in a timely manner creates an unfair advantage, endangers the continued purpose of this Agreement, and defeats the purposes for which this Agreement has been made through the collective bargaining process. Because it would be extremely difficult and impractical, if not impossible to fix the actual damages for breach apart from the actual costs and expense of accounting, collection and litigation, the Employer signatory agrees to pay all penalties as prescribed in the applicable trust document in regards to all such breaches.

10. All contributions to Trust Funds shall be payable to the designated depository in one (1) check.

## ARTICLE 20
## NO LOCK-OUT OR STRIKE CLAUSE

1. During the term of this Agreement, there shall be no lock-out by the Employer, nor any strike, sit-down, refusal to work, stoppage of work, slowdown, retarding or production or picketing of the Employer on the part of the Union or its representative, or on the part of an employee of the Employers unless provided for elsewhere in this Agreement.

- 35 -

# ARTICLE 36
# DURATION OF AGREEMENT

This Agreement shall be in full force and effective from July 1, 2005 through June 30, 2008 and shall continue thereafter from year to year unless either party serves written notice upon the other at least sixty (60) days prior to July 1 of any subsequent year of its desire to amend, modify or terminate this Agreement.

**WE HEREBY AGREE TO THE TERMS AND CONDITIONS STATED HEREIN:**

District Council #16

Print Name: _____

Sign Name: _____

Date: _____

Company: _____

Print Name: _____

Sign Name: _____

Date: _____

- 55 -

WE HEREBY AGREE TO THE TERMS AND CONDITIONS STATED HEREIN:

District Council No. 16                     Bevil's Floor Service
                                            Company

_Curtis Day_                                _Benny W. Bevil_
Print Name                                  Print Name

_[signature]_                               _B W. Bevil_
Sign Name                                   Sign Name

9/1/05                                      9/1/05
Date                                        Date

LAW OFFICES OF
## ERSKINE & TULLEY
A PROFESSIONAL CORPORATION
220 MONTGOMERY STREET, SUITE 303
SAN FRANCISCO, CALIFORNIA 94104
PHONE: (415) 392-5431   FAX: (415) 392-1978

MORSE ERSKINE (1895-1968)
J. BENTON TULLEY (1908-1974)

April 25, 2007

Bevil's Floor Service
533 Burke Street
San Jose, CA 95112

Re: Employer No. 000-000020-000

Dear Management:

We represent the Trustees of the Northern California Floor Covering Industry Welfare Fund, and we are writing you concerning the liquidated damages for the months of September 2006 through February 2007 as follows:

| Employer No's   | Work Month | Amount Due |
|-----------------|------------|------------|
| 000-000020-000  | 9/2006     | $2,948.14  |
| 000-000020-000  | 10/2006    | $ 855.06   |
| 000-000020-000  | 11/2006    | $ 668.38   |
| 000-000020-000  | 12/2006    | $4,462.56  |
| 000-000020-000  | 1/2007     | $4,267.28  |
| 000-000020-000  | 2/2007     | $4,064.83  |

Under the terms of the Trust, a contribution payment must be received by the 20th day of the calendar month in which it becomes due, and if it is not, the account is listed as delinquent. The Trust Agreement provides that delinquent contribution payments are to be assessed liquidated damages at the rate of 20% of the amount of the contributions due or $25.00, whichever is greater for each delinquent month. This agreement also provide that the employer is obligated to pay attorneys fees and court costs if legal action is necessary to collect the delinquency.

Please forward your check payable to the Northern California Floor Covering Welfare Fund in the total amount of $ 17,266.25 for these liquidated damages TO THIS OFFICE within the next ten (10) days.

Please give this matter your immediate attention, so as to avoid the extra expense and inconvenience to you of legal action.

If you believe our information is inaccurate or that we are unaware of all of the pertinent circumstances in this matter, please contact me at once.

Yours very truly,

ERSKINE & TULLEY

by:   Sharon Eastman
Assistant to Michael J. Carroll
SE/bms