# NORTHERN CALIFORNIA FLOOR COVERING WELFARE TRUST FUND

## Procedures for Handling Employer Delinquencies

### Recitals

WHEREAS, the Board of Trustees of the Northern California Floor Covering Welfare Plan desires to set forth in writing its procedures for handling delinquencies of employer contributions due the Welfare Plan and its procedures for assessing liquidated damages against an employer for such delinquencies pursuant to Article II, Section 13, and Article IV, Section 2(k) of the Trust Agreement:

WHEREAS, the Fund has administered employer delinquencies and the assessment of liquidated damages in accordance with the proposed policy:

THEREFORE, the Board of Trustees adopts the following procedure for handling employer delinquencies effective January 1, 2000:

### Procedures

To implement the delinquency and collection provisions in the pertinent collective bargaining agreements and the Welfare Trust Agreement, the Board of Trustees of the Welfare Plan adopts the following:

I.    **General Procedures**.

    A.    Contributions are to be paid monthly and are due no later than the twentieth (20th) day after the end of the month being reported.

    B.    A complete, accurate employer transmittal form must accompany contributions.

    C.    The Administrator shall balance the employer contribution transmittal reports to the bank deposits and determine if all contributions due were timely paid; it shall then check the employer contribution list and compare it with the reports received to determine which, if any, reports have not been submitted.

    D.    An employer shall be deemed delinquent:

        (1)    If the contributions (and an accurate transmittal) for hours worked in the preceding month are not mailed to the bank account by the twentieth (20th) of the succeeding month. If the Administrator receives the contribution in an envelope postmarked on or before the twentieth (20th) day, then the employer is not delinquent with its contribution;

(2)   If no transmittal report is received;

(3)   If the contribution received is less than the amount required to be contributed; or

(4)   If the contribution received is in the form of a non-negotiable instrument.

E.   If an employer has not been delinquent within the preceding twelve (12) months and the employer cures a delinquency within fifteen (15) days of the date the contribution became delinquent, good cause for the delinquency is presumed and the liquidated damages will be waived by the Administrator ("Administrative Waiver").

F.   If a contribution is postmarked after the twentieth (20th) day of the succeeding month, the Administrator shall attach the envelope to the back of the delinquent transmittal for its records.

G.   If an Administrative Waiver is not available to an employer because it has already received a waiver of liquidated damages within the past twelve (12) months, it may make a written request to the Board of Trustees that liquidated damages be reduced or for a payment plan to be developed. The Board of Trustees has the authority, in its discretion and for good cause shown, to reduce liquidated damages, or to establish a payment plan with the delinquent employer.

II.   **Procedures for Different Type of Delinquencies.**

The following procedures will apply for different types of delinquencies:

A.   Delinquency: No Contributions and No Employer Transmittal.

1.   At the accounting closing date, the Administrator shall send by first class mail to the delinquent employer a delinquency notice notifying the employer of the delinquency and of the assessment of ten percent (10%) liquidated damages, which will be increased to twenty percent (20%) liquidated damages if the matter is referred to legal counsel.

2.   Fourteen (14) days after the first delinquency notice is mailed, the Administrator shall send by first class mail a second delinquency notice reminding the employer of the of the liquidated damages assessment and that the matter will be referred to legal counsel at month's end.

3.   If the contributions are paid prior to month's end (and before referral to legal counsel), the liquidated damages will remain at ten percent (10%).

4.  At month-end of the delinquency, the Administrator shall refer the matter to collections legal counsel. Upon referral, the assessed liquidated damages will be increased to twenty percent (20%).

5.  The Administrator shall continue normal billing of the employer. The Administrator shall update counsel and trustees with periodic reports.

**B.**   Delinquency: Late Contributions -- Received After 20th of Month

1.  The Administrator shall verify that the contribution envelope is postmarked after the twentieth (20th) of the succeeding month. The Administrator shall attach the envelope to the back of the delinquent transmittal for its records.

2.  The Administrator shall assess the employer liquidated damages equal to the sum of $25.00 per delinquency or 10% of the amount due, whichever is greater, unless the employer is entitled to an Administrative Waiver.

3.  At the accounting closing date, the Administrator shall send by first class mail to the delinquent employer notice that the contribution was late, the amount of the liquidated damages, and a reminder that the liquidated damages will be increased to twenty percent (20%) of the amount due if the matter is referred to legal counsel.

4.  If the contributions are paid prior to month's end (and before referral to legal counsel), the liquidated damages will remain at ten percent (10%), or $25.00 per delinquency, whichever is greater.

5.  At month-end of the delinquency, the Administrator shall refer the matter to collections legal counsel. Upon referral, the assessed liquidated damages will be increased to twenty percent (20%).

6.  The Administrator shall continue normal billing of the employer and update legal counsel and trustees with periodic reports.

**C.**   Accounts Receivable -- Underpaid Contributions.

1.  At the accounting closing date, the Administrator shall send to the delinquent employer by first class mail a memo on the transmittal notifying the employer that the contribution was underpaid. Also, the Administrator shall send notice by first class mail of the amount of the liquidated damages and a reminder that the liquidated damages will be increased to twenty percent (20%) of the amount due if the matter is



referred to legal counsel.

2. The Administrator will include the notice on each monthly transmittal until the full contribution and liquidated damages are paid.

3. If the matter is not resolved sixty (60) days after the delinquency, the Administrator shall refer the matter to collections legal counsel. Upon referral, the assessed liquidated damages will be increased to twenty percent (20%).

4. The Administrator shall continue normal billing of the employer and update legal counsel and trustees with periodic reports.

D. **Accounts Receivable — Employer Transmittal, but no Contributions.**

1. At the accounting closing date, the Administrator shall telephone the delinquent employer, notifying the employer that no contribution was received. The Administrator shall make a note of the telephone conversation in the employer's file.

2. If the contribution is not paid within five (5) days of the telephone call to the delinquent employer, the Administrator shall send notice by first class mail of the amount due, the amount of the liquidated damages and a reminder that the liquidated damages will be increased to twenty percent (20%) of the amount due if the matter is referred to legal counsel.

3. If the matter is not resolved fifteen (15) days after the delinquency, the Administrator shall refer the matter to collections legal counsel. Upon referral, the assessed liquidated damages will be increased to twenty percent (20%).

4. The Administrator shall continue normal billing of the employer and update legal counsel and trustees with periodic reports.

E. **Payroll Audit Discrepancies**

1. The Trust has delegated to the auditor the responsibility for performing a random audit of payroll contributions from a list compiled by the auditor and agreed to by the trustees at the beginning of each year. The trustees may also direct the accountant to perform focused audits.

2. The auditor shall submit its initial audit results to the Union for review. The Union shall return the audit, with any changes, to the auditor for

revisions, within 45 days.

The auditor shall also forward the initial audit results to the Employer with a cover letter explaining that the employer has 45 days to respond to the audit.

If the employer responds with a question or objection, that portion of the total shown in the audit report is treated as a disputed amount. The auditor shall notify the Administrator of the undisputed amounts and the Administrator shall bill the employer for all amounts which have not been disputed.

Disputes which are not resolved between the auditor and the employer are presented to the trustees at the next meeting. The trustees determine whether collection action should be discontinued. In the absence of instructions to the contrary, disputed amounts are billed by the Administrator, and, if necessary, referred to legal counsel for collection.

If no response is received from the employer within 45 days, the Administrator shall manually bill the employer by first class mail. The bill shall include all items to be assessed, including audit costs and liquidated damages.

If upon completion of the audit it is determined that the amount of delinquency is greater than 10% of the total amount of contributions actually made during the audit period, the employer shall pay the full cost of the audit. If the amount of the delinquency is less than 10% of the total amount of some contributions actually paid during the audit period, then the cost of the audit shall be borne by the Fund.

3.    If the employer has not paid the delinquent contributions, audit costs and liquidated damages within sixty (60) days after the bill and notice is mailed, the Administrator shall refer the matter to collections legal counsel. Upon referral, the assessed liquidated damages will be increased to twenty percent (20%).

F.    The Chronic Delinquent.

1.    If an employer is not eligible for an Administrative Waiver, and has failed to pay the contributions due prior to referral of the matter to collection counsel, liquidated damages shall increase from ten percent (10%) to twenty percent (20%) as of the date of referral.



2. If an employer is chronically delinquent in making contributions to the Trust, the Board of Trustees may create a procedure whereby the chronically delinquent employer must pay his contributions in a weekly or bi-weekly basis, and/or require chronically delinquent employers to post a bond for the payment to cover such required contributions if, in the judgement of the Board, such procedure is necessary to ensure prompt and correct payment.

## III.   Trust Collections Legal Counsel Responsibility.

A.   Trust legal counsel shall attempt to settle the dispute without litigation by first attaching any bonds available to satisfy collection and to use any other similar methods for recovery. Legal counsel shall, in addition to any amount owing, demand liquidated damages, interest, attorneys' fees and other cost of collection.

B.   When an employer has posted a bond to cover the financial obligation owed to the Fund, the collection attorney will notify the bonding company of the delinquency sixty days after the delinquency has been in existence.

C.   If legal counsel recommends settlement of any claim short of litigation or prior to a trial or a motion or in any bankruptcy proceeding, authorization of any settlement shall be determined by the Trustees, or their designate(s).

D.   If settlement cannot be reached, collection legal counsel shall notify the Trustees and file a lawsuit on behalf of the trust against the employer any related individual and entity.

# AGREEMENT AND DECLARATION OF TRUST
## PROVIDING FOR THE
## NORTHERN CALIFORNIA FLOOR COVERING INDUSTRY
## WELFARE FUND

### Amendment One

Pursuant to the authority contained in Article X, Section 1 of the Agreement and Declaration Of Trust Providing for the Northern California Floor Covering Industry Welfare Fund effective January 2, 1996, the Trustees hereby amend the Agreement and Declaration of Trust as follows:

The second sentence in Article II, Section 9 is revised to read as follows:

If payment is not received by the twentieth (20th) day of the calendar month in which it becomes due, such Contribution shall be delinquent unless it is received in an envelope postmarked on or before the twentieth (20th) day of said month.

Executed this _____ 2 day of _April_, 1997 at _Oakland_ California.

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

JUN 13 EU

## SECOND AMENDMENT TO AMENDED AGREEMENT AND DECLARATION OF TRUST CENTRAL COAST COUNTIES FLOOR COVERING INDUSTRY HEALTH AND WELFARE TRUST FUND

Pursuant to the authority contained in Article IX, Section 1, of that Amended Agreement And Declaration Of Trust by and between Floor Covering Association, Central Coast Counties, and Carpet, Linoleum and Soft Tile Workers, Local No. 1288, the parties do hereby amend that certain Amended Agreement And Declaration Of Trust dated May 13, 1976, by and between the aforementioned parties, effective February 1, 1997, as follows:

1.      The parties do hereby amend the aforesaid Amended Agreement And Declaration Of Trust in its entirety and in its place and stead do hereby adopt the Agreement and Declaration of Trust providing for the Northern California Floor Covering Industry Welfare Fund.

2.      In accordance with the action taken in paragraph 1 above, the name of the Trust is changed to Northern California Floor Covering Industry Welfare Fund.

1

This amendment has been entered into this 9th day of January 1997.

FLOOR COVERING ASSOCIATION,
CENTRAL COAST COUNTIES

CARPET, LINOLEUM AND
SOFT TILE WORKERS NO. 12
AS SUCCESSOR TO LOCAL
NO. 1288

_____

_____

_____

_____

_____

_____

AGREEMENT AND DECLARATION OF

TRUST PROVIDING FOR THE NORTHERN CALIFORNIA

FLOOR COVERING INDUSTRY WELFARE FUND

## AGREEMENT AND DECLARATION OF TRUST PROVIDING FOR THE NORTHERN CALIFORNIA FLOOR COVERING INDUSTRY WELFARE FUND

This Agreement, effective as of _1/2/96_, by and between the various individual and associated employers in the Northern California Floor covering Industry, herein collectively referred to as "Employer" and Carpet, Linoleum & Soft Tile Workers Local 12, International Brotherhood of Painters & Allied Trades, AFL-CIO, herein collectively referred to as "Union", recites and provides as follows:

## RECITALS:

The Employer and Union, as successor to Carpet, Linoleum & Soft Tile Workers Local Nos. 1290, 1235 and 1238, are parties to Collective Bargaining Agreements providing that each Individual Employer covered by the Agreements make specified contributions on behalf of each employee covered by each Collective Bargaining Agreement to one or more of the following Funds: Resilient Floor Covering Welfare Trust Fund, Floor Covering Industry Welfare Fund, and/or Floor Covering Industry, Central Coast Counties, Health and Welfare Trust Fund, hereinafter "predecessor Funds".

Pursuant to the provisions of such existing Collective Bargaining Agreements, and consistent with the provisions of said predecessor Trust Agreements, the Employer and the Union desire to establish and maintain the Northern California Floor Covering Industry Welfare Fund (hereinafter "Fund") as the successor in interest to the Resilient Floor Covering Welfare Trust Fund, the Floor Covering Industry, Central Coast Counties, Health and Welfare Trust Fund. This Fund shall comply with the provisions of Section 302(c) of the Labor Management Relations Act, as amended, and all other provisions of law.

The Employer Trustees and the Union Trustees of the predecessor funds have agreed on the following terms and provisions as the terms and provisions of this Trust Agreement governing the establishment and administration of the Fund. This Trust Agreement shall comply with all of the requirements of the Employee Retirement Income Security Act of 1974, as amended, (hereinafter "ERISA") and of any valid regulations issues pursuant to said Act.

## PROVISIONS:

In consideration of the foregoing, and of the mutual promises hereinafter provided, the parties agree as follows:

# ARTICLE I

## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this agreement:

Section 1: The term "Collective Bargaining Agreement" includes (1) collective bargaining agreements between the Employer and the Union, (2) any predecessor collective bargaining agreement between the Employer and the Union; (3) any other collective bargaining agreement between the Union and/or any of its affiliates and any Individual Employer which provides that such Individual Employer shall make contributions to the Fund or shall comply with the wages, hours and working conditions of the Collective Bargaining Agreement; and (4) any modification, amendment, extension or renewal of any of said agreements, or any substitute for or successor to any such agreement, which provides for the making of contributions to the Fund or Plan or any Predecessor Fund or Plan.

Section 2: The term "Fund" means the Trust Fund created and established by this Trust Agreement and into which all monies paid by the Employer on behalf of employees shall be deposited.

Section 3: The term "Predecessor Fund" means any of the following Trust Funds: Resilient Floor Covering Welfare Trust Fund; Floor Covering Industry Welfare Fund; and/or Floor Covering Industry, Central Coast Counties, Health and Welfare Trust Fund.

Section 4: The term "Trust Agreement" means this agreement and any modification, amendment, extension or renewal thereof.

Section 5: The term "Plan" means the schedule of benefits and services as are agreed upon from time to time by the Trustees, together with specifications and conditions applicable to the payment or provisions for such benefits or services, to which benefits or services the eligible employees and others named herein shall be entitled under this Trust Agreement or any coverage or insurance obtained hereunder, and for which contributions are payable to the Fund.

Section 6: The term "Individual Employer" means any individual employer who is required to make any contributions to the Fund pursuant to any Collective Bargaining Agreement to which the Individual Employer and Local 12 is bound, or who does in fact make one or more contributions to the Fund. The term "Individual Employer" shall also include the Union, and any corporation, trust or other entity which provides services to the Fund, or which provides services in the enforcement or administration of

.. contracts requiring Contributions to the Fund or Plan, or in the training of apprentices or journeypersons, in the classifications covered by the Collective Bargaining Agreements, and which makes contributions to the Fund with respect to the work of its employees pursuant to Subscriber Agreements to be approved by the Board of Trustees; provided the inclusion of such entity as an Individual Employer is not a violation of any existing law or regulation. The Union, corporation, trust or other entity shall be an Individual Employer solely for the purpose of making Contributions with respect to the work of its respective employees and shall have no other rights or privileges as an Individual Employer under this Trust Agreement.

Section 7: The term "Employee" means any employee of an Employer or Individual Employer who performs or is paid for one or more hours of work covered by any of the Collective Bargaining Agreements to which Local 12 is bound. The term "Employee" shall also include employees of other entities described in Section 6 of Article I of this Trust Agreement with respect to whose work contributions are made to the Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of any of said employees is not a violation of any existing law or regulation.

Section 8: The term "Employee" may also include retired employees, and employees who have lost eligibility for benefits and who are permitted to make self-contributions to this Trust Fund under such terms and conditions as the Trustees may prescribe.

Section 9: The terms "Board of Trustees" or "Board" shall mean those persons designated as Trustees or Successor Trustees in accordance with this Trust Agreement.

Section 10: The term "Union" means Carpet, Linoleum & Soft Tile Workers Local 12, or predecessor Local Union Nos. 1235, 1288, and 1290.

Section 11: The term "Contribution" means any contribution made, or to be made, to the Fund by an Individual Employer under the provisions of a Collective Bargaining Agreement and/or Section 6 of Article I of this Trust Agreement. The term "Contribution" shall also include a payment made with respect to the work of an employee of the Union, of a corporation, trust or other entity described in Section 6 of this Article I, pursuant to regulations adopted by the Board of Trustees.

Section 12: The term "Benefits" shall mean the benefits provided under the Plan as determined by the Board of Trustees and defined in insurance policies or other contracts entered into by the Trustees, or made available by the Trustees on a self-funded basis to the extent permitted by law.

Section 13: "Associated Employers" mean any Association to whom employers, as defined herein, delegate authority with respect to this Fund up to and including the exercise of said Employer authority and the authorities all other employers making such delegation(s) to the Association or Associations.

Section 14: The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and any valid regulation issued pursuant thereto.

## ARTICLE II

## TRUST FUND

Section 1: There is hereby created the Northern California Floor Covering Industry Welfare Fund, which shall consist of all Contributions required by the Collective Bargaining Agreements or Subscriber Agreements, and to be made for the establishment and maintenance of the Plan, and all interest, income and other returns thereon of any kind whatsoever, and any other property received or held by reason of or pursuant to this trust.

Section 2: The Fund shall have its principal office at such location as the Board of Trustees may, from time to time, determine.

Section 3: No Employee shall be entitled to receive any part of the Contributions made or required to be made to the Fund in lieu of the benefits provided by the Plan.

Section 4: Neither the Employer, any Individual Employer, the Union, any Employee or beneficiary under the Plan nor any other person have any right, title or interest in or to the Fund other than as specifically provided in this Trust Agreement or in the Plan. Neither the Fund nor any contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of any Employer, any Individual Employer, Union, or any other entity referred to in Section 6 of Article I of this Trust Agreement, except for such Contributions, if any, as may be returned to an Individual Employer, or other contributing entity, as permitted by applicable law.

Section 5: The Employer shall not be liable to make Contributions to the Fund or be under any other liability to the Fund or with respect to the Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual liability, or to the extent he may incur liability as a Trustee as hereinafter provided. In no event shall any Individual Employer be liable or responsible for any portion of the Contributions due from other Individual Employers with

respect to the operations of such other Individual Employers. Individual employers shall be required to contribute to the Fund as long as they have a collective bargaining relationship with the Union.

Section 6: Neither the Employer, any Individual Employer, the Association and/or Associated Employers, the Union, ~~or any other local union, labor council or other labor organization with which the Union is affiliated~~ nor any employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 7: All amounts specified in Section 1 of this Article shall be held in trust for the purpose of paying either from principal or income, or both, for the expense of one or more of said health and welfare plans and the expense of establishing and administering the Fund.

Section 8: Contributions to the Fund shall be due for work covered by the Agreements and shall be payable at a location that the Board of Trustees may, from time to time, determine, in regular monthly installments commencing on or before the 15th of the first calendar month following execution of this document, and continuing from month to month thereafter subject to the provisions of the applicable Collective Bargaining Agreements. Each monthly contribution shall include all payments which have accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be made by check payable to the order of the Fund and transmitted to the Fund Administrator at a location that the Board of Trustees may, from time to time, determine, or as the Board of Trustees may from time to time direct. The Board of Trustees may direct that any such check may be a single check covering monies payable to one or more other Funds and may join with the Boards of Trustees of such other Funds in instructing the Fund Administrator with regard to allocation of the monies covered by such check among with the Funds. In such event the instructions so given shall be binding upon the Fund Administrators, the Individual Employer, the Employees, the Union and all other parties hereto. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board. The acceptance and cashing of any of said checks, and the disposition of the monies covered thereby in accordance with this Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreements for hours worked or paid for under said Agreements for which no Contribution has actually been received by the Fund, notwithstanding any statement, restriction, or qualification appearing on the check or any attachment thereto.

Section 9: Each Contribution to the Fund shall be due the 15th day of the calendar month in which it becomes payable. If payment is not received by the 20th day of the calendar month in which it becomes due, such Contribution shall be delinquent. The parties recognize and acknowledge that the regular and prompt payment of employer Contributions to the Fund is essential to the maintenance of the Fund and the Plan; and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and the Plan, and to the beneficiaries thereof, which would result from the failure of an Individual Employer to pay such monthly Contributions in full within the time

5

above provided. Therefore, the amount of damages to the Fund and the Plan and the beneficiaries thereof resulting from any such failure shall be presumed to be the sum of $25.00 per delinquency or 10% of the amount of the Contribution or Contributions due, whichever is greater, which amount shall be added to and become an integral part of the Individual Employer's obligation to the Fund and shall become due and payable to the Fund as liquidated damages and not as a penalty, at such location as the Board of Trustees may, from time to time, determine, upon the day immediately following the date on which the Contribution or Contributions become delinquent and shall be in addition to said delinquent Contribution or Contributions. Such Contributions, as thus increased, shall be the payments specified in this Trust Agreement and the Plan pursuant to ERISA as required to be made to the Fund. Said liquidated damages shall be paid in the same manner in which Contributions to the Fund are paid. In the event it is determined that the liquidated damages as set forth herein are not enforceable as a matter of law, the Trustees may adopt an appropriate schedule of damages to be assessed. The Trustees may waive payment of all or a part of such liquidated damages in a particular case upon good cause to the Trustees being established. Good cause for waiver shall be presumed if the delinquent Employer cures such delinquency within 15 days of the date the contributions became delinquent and has not been delinquent in any month in a 12 month period preceding such delinquency.

Section 10: Contributions to the Fund, and any liquidated damages payable in connection therewith, shall be deemed to be, and shall be, a part of the total wage package due to the Employees as per the applicable Collective Bargaining Agreement with respect to whose work such payments are made. No Individual Employer shall have any right, title or interest in such payments, or any part thereof, and no part thereof shall revert to any such Individual Employer except to the extent permitted by applicable law.

Section 11: The Board or its authorized representatives shall have the right to audit the books and records of any Individual Employer as may be necessary to determine if all contributions required of such Individual Employer pursuant to the applicable collective bargaining agreement have been properly and timely paid. and/or to determine that the correct contributions have been received for all persons for whom such Individual Employers require to make contributions pursuant to the applicable collective bargaining agreement. Each Individual Employer shall make such books and records available at all reasonable times and places, during business hours, so that such audits may be conducted. An employer shall be given a reasonable time, not to exceed sixty (60) days after notification by the auditor, in which to make such books and records available.

If upon completion of the audit it is determined that the amount of delinquency is greater than 10 percent (10%) of the total amount of contributions actually made during the audit period, the employer shall pay the full cost of the audit. If the amount of the delinquency is less than 10 percent (10%) of the total amount of contributions actually paid during the audit period, then the cost of the audit shall be borne by the Fund.

In the event that an Individual Employer fails or refuses to make the necessary books and records available for audit within the sixty (60) day period referred to above, then such Individual Employer shall be required to pay the full cost of the audit regardless of the amount of delinquency determined to be due and owing, if any.

In the event that an Individual Employer fails or refuses to make the necessary books and records available for audit and the Board of Trustees seeks to require such audit pursuant to court order, then such Individual Employer shall be liable for all costs and attorneys' fees incurred by the Board of Trustees in securing appropriate court relief compelling such audit. Such costs and attorneys' fees shall be in addition to all costs of audit which shall likewise be the responsibility of the Individual Employer.

Section 12: The Board of Trustees shall have the right, authority and duty, in the name of the Fund or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce by suit in court or otherwise, the prompt payment of Contributions to the Fund, including payments due to delinquencies as provided in Section 9 of this Article, without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement. If any Individual Employer defaults in the making of any such Contributions or payments, or fails or refuses to submit to audit entry as required by Article IV, Section 4 of this Trust Agreement, or as may be required by ERISA, and if the Board consults legal counsel with respect thereto, or files any suit or claim with respect thereto, there shall be added to the obligation of the Individual Employer who is in default or in non-compliance, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with such suit or claim, including any and all appellate proceedings therein. Effective upon any such default or delinquency, the Employees, individually and collectively, assign to the Board for collection purposes, all of their right, title and interest in and to said Contributions and other payments, and confer upon and grant to the Board all rights of action, lien rights, preferences, priorities or other security or rights they may have in connection with or relating to such Contributions and payments including the right and authority to file claims in bankruptcy, mechanics' liens and any and all other kinds of claims, demands or actions. All delinquent Contributions collected by the Board shall be credited to the respective accounts of the Employees to whom the Contributions pertain and all liquidated damages and reimbursement for attorney's fees and costs shall be credited to the administrative account of the Plan. No provision of this section, or any section of this Agreement, shall interfere with or qualify the right of the Union and their representatives to enforce compliance with the terms and provisions of any of the Collective Bargaining Agreements or to assist in the processing of claims before the Labor Commissioner or any other claims for the payment of sums due the Plan. Nothing contained in this Section shall preclude or prevent the Board of Trustees and/or any Individual Employer from resolving their differences without resorting to litigation.

Section 13: The Board of Trustees may adopt, and from time to time amend, revise or repeal the rules and regulations establishing the audit procedures and delinquency control procedures, including requiring chronically

delinquent Individual Employers to pay contributions on a weekly or bi-weekly basis, and/or requiring chronically delinquent employers to post a bond for the payment to cover such required contributions if, in the judgment of the Board, such rules and regulations are necessary to ensure the prompt and correct payment of contributions by contributing employers and are consistent with the terms and/or intent of the applicable collective bargaining agreement.

ARTICLE III

BOARD OF TRUSTEES

Section 1: Subject to the provisions of Article III, Sections 1(a) and 1(b), the Fund and Plan shall be administered by a Board of Trustees which shall consist of nine (9) Trustees representing the Individual Employers and nine (9) Union appointed Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing as set forth below, which are hereby irrevocably designated by each Individual Employer as his or its attorneys-in-fact for the purpose of appointing and removing Employer Trustees and successor Employer Trustees as herein provided. The Union Trustees representing the Employees shall be appointed by the Union by an instrument in writing signed by the Executive Officer of the Union.

Employer Trustees, or their successors, shall be appointed by an instrument in writing executed by the Employer or their successors or assigns. Each trustee or his successor so appointed shall be deemed to be acting on behalf of all employers who are or may become bound by the terms of this Trust Agreement.

The Employer and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided to control and manage the operation and administration of the Fund and the Plan. Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of the Trustees as created and established by this Trust Agreement and under applicable law. Any Trustee named hereafter shall do likewise by signing the Trust Agreement or a written acceptance thereof, in a form approved by and filed with the Board of Trustees.

Section 1(a): Employer Trustees shall be appointed to represent each of the three geographical areas comprising the predecessor Trust Funds in the following manner:

1. Three (3) Employer Trustees whose primary place of business is located within the counties of Alameda, Contra Costa, Napa or Solano shall be appointed by the Employer Trustees from the predecessor Resilient Floor Covering Welfare Trust.

Executed as of the day and year first above written.

CARPET, LINOLEUM & SOFT
TILE WORKERS, LOCAL 12

By: _____

By: _____

NORTHERN CALIFORNIA RESILIENT
FLOORING ASSOCIATION

By: _____

FLOOR COVERING ASSOCIATION,
CENTRAL COAST COUNTIES

By: _____

LINOLEUM SALES COMPANY

By: _____

WEST COAST FLOOR

By: _____Bob Garcia_____

EMPLOYER TRUSTEES

_____

_____

_____

_____

_____

_____

EMPLOYEE TRUSTEES

_____

_____

_____

_____

_____

_____

24

EMPLOYER TRUSTEES

*[signature]*

*[signature]* Garcia Jr

EMPLOYEE TRUSTEES

*[signature]* Pete Gibbs

*[signature]* Thurman Leon Bam

*[signature]* Wardel Wagner

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned hereby accept office as trustees appointed pursuant to the foregoing agreement and agree to act under and be subject to all of the terms and conditions of said agreement. The undersigned hereby declare that they hold the Fund created by said agreement in trust for the uses and purposes set forth in said agreement.

Dated: January 2, 1996

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES